

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHERMAN L. SHELTON, JR.,

      Petitioner,

v.                                                    Civil Action No. **3:08cv270**

DIRECTOR OF DEPARTMENT
OF CORRECTIONS,

      Respondent.

## MEMORANDUM OPINION

Sherman L. Shelton, Jr. ("Petitioner"), proceeding *pro se*, filed this 28 U.S.C. § 2254

petition. Petitioner challenges his convictions in the Circuit Court for the County of Chesterfield

("the Circuit Court") for obtaining money by false pretenses, uttering forged checks, and larceny.

Respondent filed a motion to dismiss. Petitioner has responded.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.**    **Indictment and Trial**

Between June 14, 2004, and June 16, 2004, an individual used two stolen checks to

purchase items and obtain cash at a Food Lion in Chesterfield County. Thereafter, on June 17,

2004, an individual used a stolen check drawn on the same account to purchase items at a

Ukrop's in Chesterfield County. On November 15, 2004, in connection with these crimes,

Petitioner was indicted for three counts of uttering and two counts of larceny. Petitioner also was

charged with obtaining money by false pretenses, a misdemeanor. Petitioner was arraigned on

February 7, 2005. Petitioner, proceeding *pro se* with standby counsel, pleaded not guilty to each

count, and requested a bench trial.

The Circuit Court conducted the bench trial on June 2, 2005. Immediately before the trial, the Circuit Court denied Petitioner's outstanding motions for discovery,[1] a bill of particulars, and to suppress identifications because Petitioner had not properly noticed the motions for hearing at least seven days prior to the date of trial. Petitioner then moved orally to quash the indictment, and to dismiss the charges against him due to a lack of probable cause for his arrest. The Court also denied these motions because they had not been noticed for hearing. The matter then proceeded to trial.

Heather Overbee, a cashier at Food Lion, testified that Petitioner had come through her line several times between June 14, 2004, and June 16, 2004, and had passed the two stolen checks then. She testified that her manager asked her about the checks after noticing that, although they were drawn on the same person's account, they had different social security and telephone numbers, and the routing numbers had been altered. According to Ms. Overbee, the checks were passed on the same day although they were dated June 14, 2004, and June 15, 2004; she didn't notice the discrepancy because she was talking to Petitioner. On cross-examination, Petitioner asked Ms. Overbee, "Did you ask me for identification at that time?" (Trial Tr. 33.) Ms. Overbee replied that she had not. She testified that she recognized Petitioner because he came into the store once or twice a week, and he usually drove a yellow car she believed to be a Cavalier or Neon. Ms. Overbee testified that she had first identified Petitioner after viewing the security film,[2] and again during a photo spread identification on August 6, 2004.

[1] The Commonwealth's Attorney argued that all discoverable physical evidence had already been disclosed at the preliminary hearing. (Trial Tr. 11-12.)

[2] Petitioner claims to have been previously unaware of the security film's existence.

2

Joy Worrell, a manager at Food Lion, testified that she alerted police[3] after noticing that the checks were damp and that the routing numbers had been altered. She identified Petitioner as a frequent customer who usually arrived in a yellow Neon. She recognized Petitioner in the store, along with the yellow car in the lot, on the day the checks were passed.

Detective John Stein testified that Officer Pierpont had initially responded to the Food Lion crimes on June 16, 2004. Officer Pierpont's initial report noted that the suspect identified in the security video had a mustache and facial hair, but he was unable to determine the suspect's age or weight. Detective Stein had the tape in his possession after retrieving it from evidence that morning, but had never viewed the tape. Officer Pierpont informed Detective Stein that a third officer, Officer Dehart, suspected Petitioner of using checks drawn on the same account to defraud a Ukrop's. Officer Dehart had also learned from Petitioner's ex-girlfriend, Mia Santos, that Petitioner had borrowed her yellow Dodge Neon on the relevant dates. Detective Stein presented to Ms. Overbee a six-photograph array on August 6, 2004, from which she immediately identified petitioner.

Kelly Newman, a cashier at Ukrops, testified that Petitioner had passed a stolen check on June 17, 2004. After Petitioner left, Mr. Newman's manager showed him that one digit on the routing number had been changed. Several weeks later, Mr. Newman's manager and, subsequently, Officer DeHart showed him pictures of Petitioner,[4] whom Mr. Newman identified as the culprit both times. On cross-examination, Petitioner asked Mr. Newman, "Did you ask me

---

[3] Ms. Worrell does not testify as to when she called the police. The indictment only specifies that the checks were passed between 6/14 and 6/16.

[4] The record does not reveal whether Mr. Newman viewed the same picture both times.

3

for identification?" (Trial Tr. 66.) Mr. Newman had not, but testified that he usually remembered his customers, and identified Petitioner as the culprit.

Officer Dehart testified that, on June 18, 2004, a manager at Ukrop's informed him that a suspicious check had been passed the previous day. Officer Dehart also obtained a description of the suspect's vehicle, a yellow Dodge Neon. Officer Dehart testified that he had seen only one yellow Dodge Neon in his entire career, and that it had been reported for illegally dumping trash near the Ukrop's on March 18, 2004. Officer Dehart used the license plate number in the earlier report to link the car to its owner, Mia Santos. He contacted Ms. Santos on July 9, 2004, who said that Petitioner used the car on the relevant dates. Afterwards, showed Mr. Newman a photograph of Petitioner from a prior arrest. Officer Dehart also testified that, shortly after the incident, a manager at Ukrop's gave him Petitioner's identification card from the lost and found.

Mia Santos testified that Petitioner had been her boyfriend in June of 2004, and that she had regularly loaned Petitioner her yellow Dodge Neon. Lindsey Leach, upon whose account the checks were drawn, testified that her checkbook had been stolen from her car on June 10, 2004.

At the close of the bench trial, the Circuit Court found Petitioner guilty of one count of obtaining money by false pretenses, three counts of uttering, and two counts of petit larceny. On January 23, 2006, the Circuit Court sentenced Petitioner to ten years of active imprisonment.[5] (Jan. 5, 2006 Tr. at 32.) The Circuit Court appointed appellate counsel at Petitioner's request.

---

[5] Petitioner also presented at the sentencing hearing a motion to set aside the verdict on the grounds that: (1) denying his pretrial motions as improperly noticed violated his rights under the Fifth and Fourteenth amendments and under Virginia law; (2) the absence of Mr. Newman's manager at trial violated Petitioner's right to confront the witnesses against him; (3) the identifications by Mr. Newman and Ms. Overbee were obtained through unduly suggestive procedures; (4) Petitioner was arrested without probable cause; and, (5) the evidence presented against him at trial was insufficient for a conviction. The Circuit Court denied his motions.

4

**B.     Appeal and Postconviction Review**

On direct appeal, Petitioner argued that:  (1) the evidence was not sufficient to convict

Petitioner of uttering and larceny; (2) police obtained identifications from Mr. Newman and Ms.

Overbee through the use of overly suggestive out-of-court procedures; and (3) the belated

disclosure of the security tape's existence violated Petitioner's due process rights.  Petition for

Appeal, *Shelton v. Commonwealth of Virginia*, No. 0134-06-02, at 5, 8, 11 (Va. App. May 4,

2006).  A single judge of the Virginia Court of Appeals affirmed Petitioner's conviction on

November 16, 2006.  *Shelton v. Commonwealth of Virginia*, No. 0134-06-02 (Va. App. Nov. 16,

2006) ("*App. Op.*"); *see* Br. in Support of Respt.'s Mot. to Dismiss Ex. 2.  Appellate counsel

requested review by a three-judge panel on November 30, 2006.  Subsequently, in accord with

Petitioner's orders, counsel filed a motion to withdraw the request for panel review, which was

granted on February 26, 2007.  (Feb, 26, 2007 Order, Va. Ct. of App. Rec. at 68.)

Counsel for petitioner raised identical claims in a petition for appeal to the Supreme

Court of Virginia.  Petition for Appeal, *Shelton v. Commonwealth of Virginia*, No. 070612 (Va.

March 27, 2007).  On May 15, 2007, the Supreme Court of Virginia dismissed his appeal as

untimely filed.  *Shelton v. Commonwealth of Virginia*, No. 070612 (Va. May 15, 2007 ).

Petitioner raised the following claims in his state habeas petition:

Claim 1[6]:     The trial court violated Petitioner's Sixth Amendment[7] right to confront
                witnesses by allowing the prosecutor, through Officer Dehart, to introduce
                hearsay statements by Ukrop's Manager Michelle Jenkins; and,

---

[6] Petitioner's claims have been renumbered for analytical clarity.

[7] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with
the witnesses against him . . . ."  U.S. Const. amend. VI.

5

Claim 2:    Appellate counsel was ineffective:

       (A)    For omitting or failing to adequately argue the meritorious claims that:

           (i)    Petitioner's due process rights were violated by the unnecessarily suggestive identification procedure used in the investigations,

           (ii)    Petitioner's Sixth Amendment right to confrontation was violated, and,

           (iii)    the Trial Court's denial of his motion for discovery violated Petitioner's rights under the Due Process Clause[8] and under Va. Sup. Ct. R. 3A:11, 4:15(A); and,

       (B)    For failing to correct false statements in the Prosecutor's brief on appeal.

Petition, *Shelton v. Commonwealth of Virginia*, No. 071688 (Va. Aug 10, 2007) ("*State Hab. Pet.*"); (*see* Br. in Support of Resp.'s Mot. to Dismiss Ex. 4.). On February 5, 2008, the Supreme Court of Virginia denied Petitioner's state habeas application. *Shelton v. Commonwealth of Virginia*, No. 071688 (Va. Feb. 5, 2008) ("*State Hab. Op.*"); (*see* Br. in Support of Resp.'s Mot. to Dismiss Ex. 5.).

## II. GROUNDS FOR FEDERAL HABEAS RELIEF

On April 25, 2008, the Court received from Petitioner this federal habeas petition raising the following claims for relief:

Claim 1[9]:    The trial court violated Petitioner's Sixth Amendment right to confront witnesses by allowing the prosecutor, through Officer Dehart, to introduce hearsay statements by Ukrop's Manager Michelle Jenkins.

Claim 2:    Petitioner's right to due process under the Fourteenth Amendment was violated because:

       (A)    the prosecution used an unnecessarily suggestive identification process to obtain identifications from

---

[8] "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

[9] Petitioner's claims have been renumbered for analytical clarity.

|     |       | (i)   | Ms. Overbee and, |
|-----|-------|-------|------------------|

            (i)     Ms. Overbee and,

            (ii)    Mr. Newman; and,

     (B)    the trial court denied Petitioner's motion for discovery on the grounds that it was not accompanied with a notice for hearing.

Claim 3:     Appellate counsel was ineffective:

     (A)    For omitting or failing to adequately argue the meritorious claims that:

            (i)     Petitioner's due process rights were violated by the unnecessarily suggestive identification procedure used in the investigations,

            (ii)    Petitioner's Sixth Amendment right to confrontation was violated, and,

            (iii)   the Trial Court's denial of his motion for discovery violated Petitioner's rights under the Due Process clause and under Va. Sup. Ct. R. 4:15(A); and,

     (B)    For failing to correct false statements in the Prosecutor's brief on appeal.

## III. EXHAUSTION AND PROCEDURAL DEFAULT

"In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910–11 (4th Cir. 1997)). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." *Matthews*, 105 F.3d at 911 (*citing Spencer v. Murray*, 18 F.3d 237, 239 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the

habeas petitioner has procedurally defaulted his federal habeas claim." *Id. (citing Coleman v. Thompson,* 501 U.S. 722, 731–32 (1991)). Furthermore, a federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id. (quoting Coleman,* 501 U.S. at 735 n.1). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court is precluded from reviewing the merits of a defaulted claim. *See Harris v. Reed,* 489 U.S. 255, 262 (1989).

The Supreme Court of Virginia found Claim 1 barred by the rule in *Slayton v. Parrigan,* 205 S.E.2d 680 (Va. 1974), because it could have been, but was not, raised at trial and on appeal to the Supreme Court of Virginia. *State Hab. Op.* at 3 - 4. *Slayton* is an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett,* 125 F.3d 192, 196–97 (4th Cir. 1997). Claim 1 is therefore procedurally defaulted.

Petitioner argues that the Court should excuse his procedural default because he is actually innocent.[10] "Claims of actual innocence [] presented . . . as gateways to excuse a procedural default, *see Schlup v. Delo,* 513 U.S. 298, 317 (1995), should not be granted casually." *Wilson v. Greene,* 155 F.3d 396, 404 (4th Cir. 1998). The Supreme Court has explained that a claim of actual innocence must be supported with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously

---

[10] Contrary to Petitioner's suggestion, fundamental unfairness in his proceedings would not entitle him to review of his defaulted claims. *United States v. Olano,* 507 U.S. 725, 736 (1993) (*citing Sawyer v. Whitley,* 505 U.S. 333, 339-40 (1992)).

unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. If a petitioner meets this burden, the Court must then evaluate "petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 328 (internal quotations omitted). Petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327; *see also O'Dell v. Netherland*, 95 F.3d 1214, 1249-50 (4th Cir. 1996) (en banc).

Petitioner offers his sworn assertions that he is innocent and that he did not have access to Ms. Santos's vehicle on the relevant dates. (Pet.'s Resp. to Respt.'s Mot. to Dismiss, Aff. 1-2.) He also points to discrepancies between trial testimony and the summary of the offense in the presentencing report. Petitioner has not provided the sort of new, reliable evidence described by the Supreme Court. *See Schlup*, 513 U.S. at 324; *House v. Bell*, 547 U.S. 518, 540-54 (2006). Moreover, Petitioner has not obtained an affidavit from Ms. Santos. *See Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997) (concluding that mere allegations that exculpatory evidence exists are insufficient to raise colorable claim). Petitioner has failed to support his claim of actual innocence with new, reliable evidence. Claim 1 will be DISMISSED.

## IV.  DUE PROCESS

A.    **Claim 2(A) – Unnecessarily Suggestive Identification**

Petitioner claims that the Circuit Court violated his rights under the Due Process Clause by admitting Ms. Overbee's and Mr. Newman's unreliable identification testimony at

9

trial.[11]  Courts undertake a two-step analysis to determine whether identification testimony is

admissible. *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir. 1997).  At step one, courts determine

whether the identification procedure is impermissibly suggestive. *Id. (citing Manson v.

Brathwaite*, 432 U.S. 98, 110 (1977); *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972)).  The United

States Court of Appeals for the Fourth Circuit has explained that a procedure is unnecessarily

suggestive "if a positive identification is likely to result from factors other than the witness's own

recollection of the crime." *Id.* (citation omitted).  At step two, courts determine whether the

identification is "nevertheless reliable under the totality of the circumstances." *Id. (citing

Manson*, 432 U.S. at 100; *Biggers*, 409 U.S. at 198).  Relevant factors include, but are not limited

to:

> (1) the witness's opportunity to view the suspect at the time of the
> crime; (2) the witness's degree of attention at the time; (3) the
> accuracy of the witness's initial description of the suspect; (4) the
> witness's level of certainty in making the identification; and (5) the
> length of time between the crime and the identification.

*United States v. Saunders*, 501 F.3d 384, 391 (4th Cir. 2007) (citations omitted), *cert denied*, 128

S. Ct. 1107 (2008).  Courts may consider other evidence of guilt in determining the reliability of

a given identification. *Id.* at 393.

### 1.      Claim 2(A)(i) – Ms. Overbee's Testimony

Petitioner argues that his rights were violated because Ms. Overbee's identification

testimony followed the use of an unduly suggestive photo lineup.  Petitioner alleges that, before

---

[11] The Court of Appeals of Virginia did not consider the merits of this claim because Petitioner did not raise it at trial. *See App. Op.* at 2. Because counsel for Respondent failed to address this claim in her motion to dismiss, the Court will not consider whether it is procedurally defaulted. *See Yeatts v. Agelone*, 166 F.3d 255, 261 (4th Cir. 1999).

trial, the prosecutor disclosed a black-and-white photocopy of the six-suspect lineup. At trial, however, the prosecutor introduced the original color lineup. Petitioner then noticed for the first time that only he and another suspect were wearing orange jumpsuits, and that the similarly-dressed suspect looked very different from Petitioner. Assuming *arguendo* that the identification procedure was unduly suggestive, Ms. Overbee's testimony is nevertheless reliable.

The first and second factors favor the admission of the evidence. Ms. Overbee not only had an opportunity to observe the culprit, she paid such attention to him during their conversation that she neglected to verify the dates on the check. (Trial Tr. 36.) The fourth factor also favors admissibility; Ms. Overbee was certain at trial as to Petitioner's identity, and identified him in the photo lineup in "[a]bout a second." (Trial Tr. 48.) As for the fifth factor, Ms. Overbee testified that she identified Petitioner as the culprit on the day of the crime, after viewing the video of the event, and then identified him again in the photo array on August 6, 2004. Ms. Overbee's testimony that she was familiar with Petitioner as a frequent customer was uncontroverted, and Petitioner, in conducting his cross-examination, appeared to admit his guilt. Ms. Overbee's testimony was sufficiently reliable when considered in this context, and did not violate Petitioner's right to due process. Accordingly, Claim 2(A)(i) will be DISMISSED.

### 2.     Claim 2(A)(ii) – Mr. Newman's Testimony

Petitioner also argues that Mr. Newman's identification was unduly suggestive. Courts generally disfavor single-photograph identifications. *See Manson*, 432 U.S at 116 (noting that "identifications arising from single-photograph displays may be viewed in general with suspicion" (*citing Simmons v. United States*, 390 U.S. 377, 383 (1968))). Nonetheless, Mr. Newman's testimony demonstrates sufficient reliability under the totality of the circumstances.

11

Mr. Newman had an unimpeded opportunity to view Petitioner. Mr. Newman's memory of the details of the transaction, including the items Petitioner purchased and Petitioner's statement that he intended to go "on a trip to New York," evidence Mr. Newman's degree of attention at the time. (Trial Tr. 63.) At trial, Mr. Newman expressed great confidence in his identification of Petitioner. Additionally, Petitioner appeared to concede his guilt when he asked Mr. Newman, "Did you ask me for identification?" (Trial Tr. 66.) Because Mr. Newman's identification satisfied the constitutional requirements for admissibility, Claim 2(A)(ii) will be DISMISSED.

**B.      Claim 2(B) - The Trial Court's Denial of Plaintiff's Motion for Discovery**

On the day of trial, the Circuit Court denied Petitioner's motion for discovery because it had not been properly noticed for hearing. *See* Va. Sup. Ct. R. 4:15(b) (requiring written notice of any motion, including certification that the movant has conferred with affected parties in good-faith effort to resolve dispute, at least seven days before the proposed hearing date). Petitioner claims that the Court thereby violated his constitutional right to access, before trial, the checks, six-person photo array, and single photo shown to Mr. Newman.[12] Instead, Petitioner was only able to examine these items when the prosecution introduced them at trial. Petitioner claims that he and his standby "counsel for defense [were] not afforded a reasonable time to investigate and prepare," and that "[t]he discoverable items could have been useful preparing defense of mistaken identity." (Hab. Pet. at 42-43.)

---

[12] Petitioner also claims that the trial court's ruling violated Va. Sup. Ct. R. 4:15(d). Violations of state law do not state a claim for federal habeas relief. *See Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993) (explaining that "'it is not the province of a federal habeas court to reexamine state court determinations on state law questions . . . . a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States'") (*quoting Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

States are free to implement for criminal proceedings "such procedures as they choose . . . provided that none of them infringes a guarantee in the Federal Constitution." *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967). "'There is no general constitutional right to discovery in a criminal case.'" *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (*quoting Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)); *see also United States v. Uzenski*, 434 F.3d 690, 709 (4th Cir. 2006). A criminal defendant has the constitutional right to discover, upon request, only evidence under the prosecution's control that is both material and favorable to the defense. *See United States v. Thomas*, No. 92-5188, 983 F.2d 1059 (4th Cir. Jan 7, 1993), *available at* 1993 WL 2655 at *2. "[E]vidence is material when its cumulative effect is such that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. White*, 238 F.3d 537, 540 (4th Cir. 2001) (*quoting Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)). In this context, a reasonable probability of a different outcome exists when "'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Fullwood v. Lee*, 290 F.3d 663, 687 (4th Cir. 2002) (*quoting Kyles*, 514 U.S. at 435). When material evidence surfaces for the first time at trial, "the relevant inquiry is solely whether the defendant was able to effectively use the exculpatory information." *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 n.6 (4th Cir. 1985) (*citing United States v. McCrary*, 699 F.2d 1308 (11th Cir. 1983)); *see also United States v. Le*, 306 F. Supp. 2d 589, 591-92 (E.D. Va. 2004).

Even assuming that the evidence was material and favorable, Petitioner used the evidence effectively after it was introduced at trial. Petitioner questioned Ms. Overbee about the fact that, of the six individuals in the photo spread, only two were not wearing "regular clothes." (Trial Tr.

13

26.) He also pointed out that the two individuals wearing jumpsuits were dissimilar in complexion and hairstyle. Nevertheless, Ms. Overbee testified that she recognized Petitioner as a regular customer. Mr. Newman testified on cross-examination that Officer DeHart had obtained his identification using only a single photograph of Petitioner. (Trial Tr. 67.) Petitioner also pointed out at trial discrepancies between Ms. Overbee's testimony and the dates on the checks. Additionally, Petitioner does not explain why he thinks he used the evidence ineffectively, or how his presentation could have been improved. Claim 2(B) will be DISMISSED.[13]

### V. INEFFECTIVE ASSISTANCE OF COUNSEL

To succeed on an ineffective assistance of counsel claim, a petitioner must show that counsel's deficient representation prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Satisfying the deficient performance element requires the petitioner to overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). Demonstrating prejudice requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability

---

[13] Petitioner also argues that the trial court violated his right to due process by applying the notice rule after failing to enforce the rule in conjunction with earlier motions to proceed *pro se* and to obtain a handwriting analysis. Petitioner does not identify how the Due Process Clause was thereby violated, but appears to argue that the trial was thereby rendered fundamentally unfair. As discussed above, Petitioner has not shown that the rulings prejudiced his case. Petitioner also cites to Virginia law for the proposition that the prosecutor had a duty to disclose the materials Petitioner sought. To the extent Petitioner seeks to invoke *Brady v. Maryland*, 373 U.S. 83 (1963), his claim fails because Petitioner was able to effectively use the evidence at trial. *See Le*, 306 F. Supp. 2d at 591-92 (*citing Smith Grading & Paving, Inc.*, 760 F.2d at 532 n.6).

14

is a probability sufficient to undermine confidence in the outcome." *Id.* If a petitioner fails to

show either prejudice or deficiency, the Court is not obliged to address the other element. *Id.* at

697, 700.

Appellate "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal, as

'[t]here can hardly be any question about the importance of having the appellate advocate

examine the record with a view to selecting the most promising issues for review.'" *Bell v.*

*Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (second alteration in original) (*quoting Jones v. Barnes*,

463 U.S. 745, 752 (1983)). Additionally, counsel is presumed to have selected the issues that

were most likely to afford appellate relief. *Id.* (*citing Pruett v. Thompson*, 996 F.2d 1560, 1568

(4th Cir. 1993)). "'Generally, only when ignored issues are clearly stronger than those presented,

will the presumption of effective assistance of counsel be overcome.'" *Id.* (*quoting Smith v.*

*Robbins*, 528 U.S. 259, 288 (2000); additional internal quotations omitted).

## A.     Claim 3(A)(i) - Unnecessarily Suggestive Identification Procedure

Petitioner argues that counsel was ineffective for failing to raise on appeal the claim that

Ms. Overbee's and Mr. Newman's identification testimony violated his constitutional rights.

Appellate counsel did raise these issues; however, the Virginia Court of Appeals found that they

were defaulted due to Petitioner's failure to object at trial. Moreover, as discussed above, the

identification procedures in question were sufficiently reliable. Petitioner therefore cannot show

either deficiency or prejudice. Claim 3(A)(i) will be DISMISSED.

## B.     Claim 3(A)(ii) - Right to Confrontation

Petitioner faults appellate counsel for not arguing that the absence of Mr. Newman's

Manager at trial violated the Confrontation Clause. The Supreme Court of Virginia found that:

> The record, including the trial transcript, demonstrates that petitioner acted pro se at trial and that this issue was not raised at trial. Petitioner does not allege how this issue could have been reached through either the ends of justice or good cause exceptions to Rule 5A:18.[14] Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*State Hab. Op.* 3-4. Petitioner argues that he preserved this issue for appeal by raising it in his motion to set aside the judgment. The Supreme Court of Virginia implicitly rejected this argument in dismissing the claim on habeas review.[15] Petitioner therefore fails to show a reasonable probability that the Court of Appeals of Virginia would have even entertained his Confrontation Clause claim. Claim 3(A)(ii) will be DISMISSED.

**C.    Claim 3(A)(iii) – Denial of Petitioner's Motion for Discovery**

Petitioner claims that appellate counsel was deficient for failing to argue on appeal that the trial court's denial of discovery violated the Due Process Clause. As discussed above, Petitioner has failed to demonstrate the denial of discovery violated any federal right. Petitioner also faults counsel for not arguing that such denial violates Virginia Supreme Court Rule 4:15(d). Rule 4:15(d) applies only to civil motions practice. Counsel's failure to argue this ground was therefore reasonable. Claim 3(A)(iii) will be DISMISSED.

---

[14] Rule 5A:18 of the Virginia Supreme Court Rules provides that "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

[15] Petitioner, in his state habeas application, mentions the motion to set aside judgment. (*State Hab. Pet.* at 2.)

16

**D.    Claim 3(B) - Failure to Correct the Untrue Assertions in the Commonwealth's Appellate Brief**

According to the Petitioner, appellate counsel was ineffective for failing to challenge the following untrue assertions made by the Commonwealth in its opposition to the petition for appeal: (1) the suggestive photo line up was not objected to, (2) the defense failed to show either a substantial likelihood for misidentification or that the techniques used were overly suggestive, (3) any misidentification would result in harmless error, and, (4) Ukrop's employees identified petitioner by his identification card.  Petitioner claims that if counsel had corrected these untrue statements, the Court of Appeals would have reversed his conviction.  Because, as previously discussed, the identifications did not violate Petitioner's constitutional rights, he cannot show prejudice.  Claim 3(B) will be DISMISSED.

## VI. CONCLUSION

In light of the foregoing, Respondent's motion to dismiss (Docket No. 5) will be GRANTED.   The petition for a writ of habeas corpus will be DENIED, and the action will be DISMISSED.

An appropriate Order shall issue.

                                        /s/
                            _____
                            James R. Spencer
                            Chief United States District Judge


Date: 3 - 23 - 09
Richmond, Virginia

17